UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID WEINKAUF,

    Plaintiff,

v.                                                              CASE NO. 1:09-CV-638

UNICARE LIFE & HEALTH             HON. ROBERT HOLMES BELL
INSURANCE COMPANY and
WHIRLPOOL CORPORATION
GROUP BENEFIT PLAN,

    Defendants.
    _____/

## OPINION

Plaintiff filed this action pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), which permits federal courts to entertain an action by an insured "to recover benefits due to him under the terms of his [ERISA-qualified] plan." 29 U.S.C. § 1132. This matter is before the Court on competing motions for judgment on the administrative record filed by Plaintiff David Weinkauf and Defendants Whirlpool Corporation Group Benefit Plan ("Whirlpool") and Unicare Life & Health Insurance Company ("Unicare"). (Dkt. Nos. 23, 25.) For the reasons that follow, Defendants' motion will be granted, and Plaintiff's motion will be denied.

### I. Factual Background

ERISA Section 402 states that "[e]very employee benefit plan shall be established and

maintained pursuant to a written instrument." 20 U.S.C. § 1102. On January 1, 2007, Whirlpool Corporation implemented the Whirlpool Corporation Group Benefit Plan ("2007 Plan Document") to comply with this requirement. (A.R. 4 ("This document (and the documents incorporated by reference) constitute the plan document required by ERISA Section 402.").) The 2007 Plan Document identifies each "welfare benefit program" available to Whirlpool employees, including the benefit programs covering health, dental, vision, life insurance, long-term disability, short-term disability and business travel accidents. (A.R. 35-39.) The 2007 Plan Document also contains a spreadsheet identifying the various documents that, in combination, set forth the entirety of an insured's rights and obligations under each respective benefits program. (*Id.*) Finally, the 2007 Plan Document provides some general terms that apply to all of the programs and all claims for benefits under the programs. (A.R. 4-22.)

From 2001 to 2008, Plaintiff worked for Whirlpool as a senior consumer specialist in the fabric care division. While under Whirlpool's employ, Plaintiff consulted a variety of medical specialists regarding his longstanding headaches and sinus congestion problems, and in 2007 he was ultimately diagnosed with fibromyalgia, chronic fatigue syndrome, and sleep apnea. (A.R. 524, 792.) Plaintiff ceased working for Whirlpool on March 28, 2008, due to his medical condition. On June 20, 2008, Plaintiff applied for, and received, short-term disability benefits covering the six-month period between March 29, 2008, and September 29, 2008. On August 15, 2008, Plaintiff applied for long-term disability ("LTD") benefits

2

under Whirlpool's LTD benefits program. According to the 2007 Plan Document, the various documents that supplement the terms provided in the 2007 Plan Document itself to form the substance of Plaintiff's rights and obligations under the LTD benefits program include the Summary Plan Description of Whirlpool Corporation Benefit Plan for Salaried Employees (FlexChoice Benefits) ("SPD") and the "contract with UniCare governing long term disability benefits" ("Unicare contract"), among others. (A.R. 38.) The SPD is a document that provides a broad, but incomplete,[1] description of Plaintiff's LTD benefits program and how it operates. The Unicare contract is an agreement by which Whirlpool has delegated the responsibility for reviewing claims and making LTD benefit eligibility determinations to Unicare, a third party that offers claims review services.

On September 27, 2008, Unicare notified Plaintiff that his claim for LTD benefits had been denied because it did not meet the criteria set forth in Plaintiff's LTD benefits program and because "[t]he medical documentation presented [was] not sufficient evidence to support [Plaintiff's] lack of work capacity." (A.R. 186-87.) Plaintiff appealed the decision on April 8, 2009. Upon the recommendation of two of its affiliated physicians, Unicare denied Plaintiff's appeal on May 26, 2009. Plaintiff filed the instant action under Section 502(a)(1)(B) of ERISA, which permits federal courts to entertain an action by an insured "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).

In *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998), the Sixth

---

[1] The SPD itself states that it "does not contain a full restatement of all terms and provisions of the plan[]." (A.R. 44.)

Circuit held that generally a district court's review of a claim brought under ERISA Section 502 is limited to applying the appropriate standard of review, de novo or arbitrary and capricious, to the decision of the claims administrator based only on the evidence contained in the administrative record. *Id.* at 615-16. Defendants submitted the administrative record to the Court on November 23, 2009. The parties filed competing motions for judgment on the administrative record on December 22, 2009. (Dkt. Nos. 23, 25.)

## II. Law and Analysis

*A. Standard of Review*

The proper standard of review is an important inquiry in actions brought under ERISA Section 502. It depends on whether the ERISA-qualified plan provides a "clear grant of discretion" to the plan administrator to make benefits decisions. *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). If so, the Court reviews the denial under an arbitrary and capricious standard based on the evidence contained in the administrative record. *Wulf*, 26 F.3d at 1372-73. If not, the Court reviews the denial de novo. *Id.*

The 2007 Plan Document explicitly provides that "[a] Claims Administrator shall have the discretion and authority to determine eligibility for benefits . . . and to decide claims and, if applicable, appeals." (A.R. 11.) This language is sufficient to qualify as a "clear grant of discretion" and trigger the arbitrary and capricious standard of review. *See Admin. Comm. of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson*, 164 F.3d

4

981, 986 (6th Cir. 1999). Nevertheless, Plaintiff contends that, for a variety of reasons, de novo is the proper standard of review. None of Plaintiff's arguments are viable.

Plaintiff first argues that, because the SPD does not contain any discretion-granting language, de novo is the proper standard. The Sixth Circuit has directly rejected this argument. There is no requirement that the discretion-granting language appear in the SPD. If the SPD is silent as to whether the administrator is entitled to discretion, as is the case here, discretion-granting language in the 2007 Plan Document itself is sufficient to trigger the arbitrary and capricious standard of review. *Brooking v. Hartford Life & Acc. Ins. Co.*, 167 F. App'x 544, 547 (6th Cir. 2006) (unpublished); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 401 (6th Cir. 1998) ("An omission from the [SPD] does not, by negative implication, alter the terms of the plan itself. The reason is obvious: by definition, a summary will not include every detail of the thing it summarizes."); *see also Teplick v. Boeing Co. Employee Health & Welfare Benefit Plan*, No. Civ. 03-264-AS, 2004 WL 1058172, at *6 (D. Or. May 11, 2004) ("[T]here is no requirement that the discretionary language must appear in the SPD.").

Plaintiff next argues that the 2007 Plan Document should not be considered part of Plaintiff's ERISA plan at all, but that it should be considered an internal Whirlpool document that confers no rights or obligations on Plaintiff, and that for this reason the 2007 Plan Document cannot act as the document that grants decision-making discretion to the claims administrator. ERISA plans are commonly made up of several documents all integrated by

5

one umbrella document that also sets forth broadly applicable terms, not unlike the 2007 Plan Document. In fact, the 2007 Plan Document itself establishes that it is not only part of the plan, but the foundation of the plan. (A.R. 4. ("This document (and the documents incorporated by reference) constitute the plan document required by ERISA Section 402.").) The 2007 Plan Document is undeniably part of Plaintiff's plan, and its terms, including its grant of discretion to the plan administrator, are binding on Plaintiff.

Third, Plaintiff argues that even if the discretion-granting language in the 2007 Plan Document is binding on Plaintiff and sufficient to trigger the arbitrary and capricious standard of review, the discretion-granting language did not extend to *Unicare's* review of *Plaintiff's* claim. As mentioned, the 2007 Plan Document grants decision-making discretion to a "claims administrator." The Plan defines a claims administrator as an entity that is "appointed by the Company to serve as the administrator of claims under the Plan." (A.R. 5.) The Plan further provides that "if no Claims Administrator is authorized to act under the terms of a Welfare Benefits Program, [a committee consisting of various Whirlpool officers] shall be the Claims Administrator." (*Id.*) Through the Unicare contract, Whirlpool delegated to Unicare responsibility for reviewing claims and appeals and determining eligibility for benefits under Plaintiff's plan. (Dkt. No. 26, Ex. 2.) Despite the existence of the Unicare contract, Plaintiff argues that for the grant of discretion laid out in the 2007 Plan Document to extend to Unicare: (1) the Unicare contract must be considered part of Plaintiff's plan, and (2) the Unicare contract must be part of the administrative record. According to Plaintiff, neither of these two purported requirements are satisfied.

6

Plaintiff's argument that the Unicare contract should not be considered part of Plaintiff's plan is premised primarily on the Supreme Court's observation that "one of ERISA's central goals is to enable plan beneficiaries to learn their rights and obligations at any time." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). Courts have interpreted this language to require that only documents that "a plan participant could read to determine his rights or obligations under the plan" are part of the plan. *Teplick v. Boeing Co. Employee Health & Welfare Benefit Plan*, No. Civ. 03-264-AS, 2004 WL 1058172, at *6 (D. Or. May 11, 2004); *see also Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 333 (7th Cir. 2000) ("The employees are entitled to know what they're getting into, and so if the employer is going to reserve a broad, unchanneled discretion to deny claims, the employees should be told about this, and told clearly."). However, the authorities cited by Plaintiff require only that an insured have ready access to the documents that establish his substantive rights and obligations under his plan, not that the documents be directly provided to him. *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 817 (7th Cir. 2002) (noting that one of ERISA's basic purposes is "to afford employees *the opportunity to inform themselves*, 'on examining the plan documents,' of their rights and obligations under the plan . . . ." (emphasis added)). The SPD is the only document that must be provided to Plaintiff, and, as discussed above, there is no requirement that the SPD contain the discretion-granting language. *Teplick*, 2004 WL 1058172, at *6, 8. In this case, Plaintiff could have accessed the Unicare contract had he expressed interest or exercised diligence in doing so. By virtue

7

of an easy-to-follow spreadsheet, the 2007 Plan Document expressly incorporated the Unicare contract into Plaintiff's LTD ERISA plan.[2] (A.R. 35, 38.) Though Plaintiff's counsel averred at oral argument that Whirlpool was reluctant to produce the Unicare contract, there is no evidence that Whirlpool or Unicare would have refused to provide Plaintiff with the Unicare contract had Plaintiff requested it. The Unicare contract should thus be considered part of the plan.

Plaintiff next argues that the grant of decision-making discretion in the 2007 Plan Document should not extend to Unicare because the Unicare contract should not be considered part of the administrative record. Generally, a district court's review of a claim brought under ERISA Section 502 is limited to applying the appropriate standard of review, de novo or arbitrary and capricious, to the decision of the claims administrator based only on the evidence contained in the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)). Plaintiff argues that, because the Unicare contract does not itself appear in the administrative record, the Court may not consider it in determining whether Unicare had discretion to review Plaintiff's claim. This argument is incorrect. As discussed above, the Unicare contract has been expressly incorporated into Plaintiff's ERISA plan through a document that is part of the administrative record, and there is a strong argument that it

---

[2] In the two cases relied upon primarily by Plaintiff, *Fritcher* and *Teplick*, the agreement by which the plan sponsor delegated the claims review procedures to a third-party does not appear to have been expressly incorporated into the insured's ERISA plan. *Fricher* and *Teplick* are thus distinguishable on this basis.

should be treated as part of the administrative record by incorporation. However, even if it is not treated as part of the administrative record by incorporation, the Court is only prohibited from considering documents that are not part of the administrative record *when applying the appropriate standard of review to the merits of Plaintiff's claims for benefits*. *See Wilkins*, 150 F.3d at 619 ("*As to the merits of the action*, the district court should conduct [the appropriate standard of review] based solely on the administrative record . . . ." (emphasis added)). The Court is not prohibited from considering evidence outside of the administrative record to ascertain the appropriate standard of review in the first place. *See Daniel v. UnumProvident Corp.*, 261 F. App'x 316, 318 (2d Cir. 2008) (unpublished) ("The General Services Agreement was offered not to establish a historical fact pertaining to the merits of [Plaintiff's] claim . . . but rather to establish which entity actually decided her claim and therefore which standard of review was applicable in federal court.") Since the Court is only using the Unicare contract to determine the appropriate standard of review, and not to examine the merits of Plaintiff's benefits claim, the prohibition on the use of evidence outside the administrative record does not apply.

*B. The Merits of the Claim*

The arbitrary and capricious standard is highly deferential to the decision of the claims administrator. Nevertheless, the Court must still assess the "quality and quantity of the medical evidence and the opinions on both sides of the issue." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). The test for upholding an administrator's benefits

9

decision under the arbitrary and capricious standard is whether "it is the result of a deliberate, principled reasoning process" and "is supported by substantial evidence." *Glenn v. Metlife*, 461 F.3d 660, 666 (6th Cir. 2006).

Three physicians retained by Defendant Unicare as independent consultants—an unidentified "board certified rheumatologist," Dr. Kaplan, and Dr. Lumpkins—have expressed opinions that, although Plaintiff is suffering from fibromyalgia, his symptoms do not appear to be severe enough to prevent him from performing a job requiring low levels of manual labor, such as a fabric care scientist. (A.R. 317-19, 422-23, 435-36).[3] The opinions of Drs. Alghafeer, Schillio, Drew, and Thompson that Plaintiff is in a great deal of pain due to his fibromyalgia (A.R. 320-397), and the opinions of Drs. Drew and Alghafeer that Plaintiff is no longer able to work (A.R. 790, 792), are undoubtedly formidable obstacles to this Court's ability to conclude that Unicare's decision is supported by substantial evidence. Although the opinions of Drs. Algahafeer, Schillio, Drew, and Thompson are not entitled to deference solely because those doctors are Plaintiff's treating physicians, *see Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003), the opinions of Drs. Alghafeer, Schillio, Drew, and Thompson may be entitled to deference because those doctors physically examined Plaintiff, while the unidentified "board certified rheumatologist," Dr. Kaplan, and Dr. Lumpkins merely reviewed Plaintiff's medical records. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005); *Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005).

---

[3]Unicare retained the "board certified rheumatologist" in relation to Plaintiff's direct claim for benefits. Unicare retained Drs. Kaplan and Lumpkins in relation to Plaintiff's appeal.

Nevertheless, the Court concludes that Unicare's decision was supported by substantial evidence. *See, e.g., Douglas v. Gen. Dynamics Long Term Disability Plan*, 43 F. App'x 864, 869-70 (6th Cir. 2002) (unpublished) (citing cases where the opinions of independent medical evaluators are sufficient to uphold a benefits denial even when they conflict with the opinions of the plaintiff's personal doctor). Fibromyalgia and chronic fatigue syndrome are uniquely subjective ailments that rarely, if ever, result in objective physical impairments. *See Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003).[4] Although Plaintiff cites some objective data indicating his distress level (A.R. 427-28), this data alone does not indicate a distress level sufficient for the Court to discard Unicare's decision as arbitrary and capricious. Indeed, Plaintiff's own treating physicians relied primarily on his cognitive impairments in concluding that he is permanently and fully disabled. (*See* A.R. 790 (noting that Plaintiff suffers from cognitive dysfunction, severe fatigue and exhaustion, difficulty with concentration, anxiety, and fogginess).) Thus, this benefits decision essentially boils down to conflicting opinions on

---

[4]The Seventh Circuit has aptly described the difficulties associated with a benefits claim based on a fibromyalgia diagnosis:

> [F]ibromyalgia, "also known as fibrositis [is] a common, but elusive and mysterious, disease, much like chronic fatigue symptom, with which it shares a number of features. Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principle symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and-the only symptom that discriminates between it and other diseases of a rheumatic character-multiple tender spots . . . ."

*Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 916 (7th Cir. 2003) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996)).

how well Plaintiff was able to manage a disability that is not easily described or quantified. Relying on the opinions of Drs. Kaplan and Lumpkins, Unicare decided that Plaintiff's symptoms, though undoubtedly real, were not severe enough to prevent him from engaging in an occupation that required a low level of physical exertion, such as a fabric care specialist. (A.R. 205-08.) In light of Plaintiff's admission that he is able to engage in a limited range of physical activities and tasks that require varying amounts of concentration, such as light chores at home and exercise at the YMCA (A.R. 287-88), the Court concludes that Unicare's decision is supported by substantial evidence and was the result of a deliberate reasoning process. Defendants are therefore entitled to judgment in their favor.

*C. Unicare as an Improper Defendant*

Defendant Unicare also argues that it is not a proper defendant. Because the Court has granted judgment in favor of Defendants on the administrative record, the Court need not address this claim.

### III. Conclusion

Unicare's denial of Plaintiff's claim for long-term disability insurance benefits is reviewed under the deferential arbitrary and capricious standard. Unicare's denial of Plaintiff's claim for benefits will be upheld because it was the product of a deliberate, principled reasoning process and it was supported by substantial evidence. Defendants' motion for judgment on the administrative record will be granted and Plaintiff's motion denied. An order and judgment consistent with this opinion will be entered.

Dated: April 23, 2010 /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE